**UTAH POWER & LIGHT COMPANY,**
a Utah corporation, Plaintiff
and Appellant,

v.

**UTAH ASSOCIATED MUNICIPAL POW-
ER SYSTEMS, a political subdivision
of the State of Utah, Defendant and
Appellee.**

No. 860333.

Supreme Court of Utah.

Nov. 13, 1989.

Sidney G. Baucom, Albert J. Colton, Anthony L. Rampton, W. Cullen Battle, Salt Lake City, for plaintiff and appellant.

Robert A. Peterson, James A. Holtkamp, David L. Deisley, Salt Lake City, for defendant and appellee.

HOWE, Associate Chief Justice:

Plaintiff Utah Power & Light Company (UP & L) brought this action against defendant Utah Associated Municipal Power Systems (UAMPS) for a judgment enjoining UAMPS from purchasing electric power generated by facilities in which it owns no interest and from selling such electricity to its members. In addition, UP & L sought to nullify contracts entered into by UAMPS and certain electric power generating companies, wherein UAMPS would purchase electricity for resale to its members, as being illegal and *ultra vires.* UAMPS filed a counterclaim seeking a declaratory judgment that it does possess those powers under the Interlocal Co-operation Act. Utah Code Ann. § 11–13–1 to 11–13–36 (1986, Supp.1989). From an adverse summary judgment, UP & L appeals.

UP & L is an investor-owned utility which provides electric power and its accompanying transmission services to customers located primarily in Utah but also in some neighboring states. It is subject to substantial and continuing regulation by the Utah Public Service Commission in the rates it charges for electric power and services, in the geographic areas it may serve, and in its ability to construct and operate electric generation, transmission, and other related facilities. UAMPS is a separate administrative entity and political subdivision of the state of Utah, created pursuant to the Interlocal Co-operation Act. Its membership consists of 26 cities, towns, and local public agencies within the state.

UP & L and UAMPS compete with each other in selling electric power to these members.

UAMPS owns an undivided 14.6 percent interest in an electric generating plant known as Hunter II, located in Emery County, Utah, and operated by UP & L. At present, UAMPS has no capacity to generate electricity other than through its interest in Hunter II. Because this generating capacity is insufficient to satisfy the needs of UAMPS' members, UAMPS contracted with the Deseret Generation & Transmission Co-operative, Tri-state Generation & Transmission Association, Inc., and Pacific Power & Light Company to purchase electricity for resale to its members. It also petitioned the Utah Public Service Commission for a certificate of convenience and necessity authorizing the construction and operation of a transmission line in southwestern Utah to transmit electric power purchased for its members. The sole issue before this Court is whether UAMPS is statutorily authorized to purchase electric power for delivery to its members.

The Interlocal Co-operation Act was enacted by the legislature in 1965. Section 11–13–2 states the purpose of the act:

It is the purpose of this act to permit local governmental units to make the most efficient use of their powers by enabling them to co-operate with other localities on a basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population and other factors influencing the needs and development of local communities [and to provide the benefit of economy of scale, economic development and utilization of natural resources for the overall promotion of the general welfare of the state].

Utah Code Ann. § 11–13–2 (Supp.1965) (amended 1977 [bracketed portion added]). In order to effectuate the purpose of the act, the legislature provided: "Any power or powers, privileges or authority exercised or capable of exercise by a public agency of this state may be exercised and enjoyed jointly with any other public agency of this state having the power or powers, privileges or authority...." Utah Code Ann. § 11–13–4 (Supp.1965, 1986). Under section 11–13–3(1), "public agency" means "any political subdivision of this state, including, but not limited to cities, towns, counties...." In other words, public agencies such as the members of UAMPS can exercise their powers jointly as long as each entity possesses the powers individually. This is further borne out in section 11–13–14 of the 1965 act, which provided in part:

Any one or more public agencies may contract with any one or more other public agencies to perform any governmental service, activity, or undertaking which each public agency entering into the contract is authorized by law to perform, provided that such contract shall be authorized by the governing body of each party to the contract.

Utah Code Ann. § 11–13–14 (Supp.1965). The act provided that the joint undertaking may be administered and operated by a joint board composed of representatives of all parties to the undertaking or by a separate legal or administrative entity created by the parties for that purpose. §§ 11–13–6, 11–13–7. However, the 1965 act did not specify how such a separate legal or administrative entity could be created.

We have previously held that the "purpose of the Interlocal Co–operation Act is to facilitate efficient and co-operative use of municipal powers among cities as provided in § 11–13–2. In view of that purpose ... the intent of the act appears to be to allow municipalities collectively to exercise powers which they already possess individually." *CP National Corp. v. Public Service Comm'n*, 638 P.2d 519, 521 (Utah 1981). It is undisputed that cities and towns have the individual authority to purchase and sell electricity. Utah Code Ann. § 10–8–14(1) (1986). The members of UAMPS have organized themselves to exercise their powers and authorities jointly under the authority of the Interlocal Co-operation Act and in accord with the purpose

of that act as stated by the legislature and this Court.

The issue in this case arises because in 1977, the legislature amended the act by adding a new section numbered 11–13–5.5, which provides:

Any two or more public agencies of the State of Utah may also agree to create a separate legal or administrative entity to accomplish the purpose of their joint or co-operative action, including the undertaking and financing of a facility or improvement to provide the service contemplated by such agreement. A separate legal or administrative entity is deemed a political subdivision of the state with power to:

(1) Own, acquire, construct, operate, maintain and repair or cause to be constructed, operated, maintained and repaired any facility or improvement set forth in such an agreement;

(2) Borrow money or incur indebtedness, issue revenue bonds or notes for the purposes for which it was created, assign, pledge or otherwise convey as security for the payment of any such bonded indebtedness, the revenues and receipts from such facility, improvement or service, which assignment, pledge or other conveyance may rank prior in right to any other obligation except taxes or payments in lieu thereof as hereinafter described payable to the State of Utah or its political subdivisions;

(3) Sell or contract for the sale of the product of the service, or other benefits from such facility or improvement to public agencies within or without the state on such terms as it deems to be in the best interest of its participants.

Utah Code Ann. § 11–13–5.5(1) (Supp. 1977).[1]

It is abundantly clear from the record and the legislative history provided therein that this amendment was enacted to accommodate the administration of the Intermountain Power Project in central Utah, a massive electric power generating facility operated primarily to serve the needs of southern California. It is equally clear from the language of section 11–13–5.5 that the legislature ensured that an administrative entity so created would have the powers necessary to administer the Intermountain Power Project. UAMPS, however, was not created to administer the Intermountain Power Project; rather, it was created by agreement of its members "to accomplish the purpose of their joint or co-operative action," which was, for the purposes of this case, to "contract for the purchase, lease or other acquisition of a supply of electric power" for resale to its members.

UP & L argues that section 11–13–5.5 must be narrowly construed to mean that a separate legal or administrative entity created under that section, such as UAMPS, can only exercise the powers specifically enumerated therein. It argues that because the section does not specifically authorize the entity created to purchase electricity from other sources, the entity is limited to building or acquiring electric generating plants and selling the electricity generated from those plants. UP & L supports its strict statutory construction argument by pointing out that UAMPS is not directly responsive to the citizens at the ballot box. Further, it argues that the members of UAMPS may accomplish the purpose of their joint or cooperative action by contract or agreement between members without creating a separate legal or administrative entity; however, when they created a separate entity under section 11–13–5.5, the members of UAMPS limited themselves to those powers enumerated in that section.

We disagree with UP & L's rigid construction and affirm the ruling of the trial court that "the powers enumerated in Section 11–13–5.5 are additional to the powers possessed by UAMPS by virtue of each member['s], individually, possessing the powers." We come to that conclusion for several reasons. First, in the same legislative act which enacted section 11–13–5.5,

1. Section numbers were later amended by 1985 Utah Laws ch. 143, § 2.

section 11-13-14, which is set out earlier in this opinion, was amended to add the following italicized language:

Any one or more public agencies may contract with *each other or with a legal or administrative entity created pursuant to this act* to perform any governmental service, activity, or undertaking which each public agency entering into the contract is authorized by law to perform, provided that such contract shall be authorized by the governing body of each party to the contract.

(Italics added.) By this amendment, the legislature made it clear that public agencies such as the cities and towns which hold membership in UAMPS may contract with a legal or administrative entity created pursuant to the act to perform any governmental service, activity, or undertaking which each public agency is authorized by law to perform. In the context of this statute, "each public agency" means each participating city and town. Since it is undisputed that cities and towns have the power to purchase and sell electric power, it follows that the members of UAMPS can invest in UAMPS this same power. It is beyond argument that the purchasing and selling of electric power is a governmental "service" or "activity," as contemplated by section 11-13-14. Thus, while prior to 1977 public agencies were authorized in section 11-13-14 to contract only with each other, since the 1977 amendment to that section public agencies may contract with the legal or administrative entity created by them. Had it been the intention of the 1977 legislature to limit legal and administrative entities to the powers specifically enumerated in section 11-13-5.5, as contended for by UP & L, the amendment to section 11-13-14 would not have been proper.

Second, section 11-13-5.5 appears to have been drafted and enacted with the Intermountain Power Project specifically in mind. We state this because its provisions appear to remove any legal roadblocks which might be raised to the building, operation, and ultimate success of that project. For example, the separate legal or administrative entity which may be created is made a political subdivision of the state. As such, it is given the power in subsection (2) to borrow money and issue bonds which presumably would be tax-free. In subsection (3), the entity is given the right to sell its product out of the state. These are all powers which were not conferred in the original 1965 enactment and which were undoubtedly necessary to facilitate the success of the Intermountain Power Project. But we do not find that by giving the separate legal or administrative entity these enumerated powers in section 11-13-5.5, it was the legislative intent to restrict or modify in any manner powers that were conferred by other sections of the act. This conclusion is buttressed by the legislature's simultaneous amendment to section 11-13-14 discussed above.

Last, section 11-13-5.5 should not be interpreted inconsistently with or contrary to the purpose of the act, which, as previously shown, is "to allow municipalities collectively to exercise powers which they already possess individually." *CP National Corp.*, 638 P.2d at 521. UP & L, however, would have this Court rule that two or more public agencies may by agreement jointly buy and sell electric power so long as the joint operation is conducted by a joint board composed of representatives from each party agency; however, if the agencies chose to have this very same operation conducted by a separate legal or administrative entity, the entity lacks the statutory authority to buy and sell electric power. No reason appears why the legislature would intend that seemingly strange result. We refuse to interpret this section to effectuate a result contrary to the purpose of the act as a whole. "The meaning of a part of an act should harmonize with the purpose of the whole act. Separate parts of an act should not be construed in isolation from the rest of the act." *Jensen v. Intermountain Health Care, Inc.*, 679 P.2d 903, 906 (Utah 1984). Further, "a fundamental principle of statutory construction is that a statute should be construed as a whole, and its terms should be construed to be harmonious with each other and the overall objective of the statute."

*Utah State Road Comm'n v. Friberg,* 687 P.2d 821, 831 (Utah 1984). In determining the legislative intent of a statute, "the statute should be considered in the light of the purpose it was designed to serve and so applied as to carry out that purpose if that can be done consistent with its language." *Johnson v. State Tax Comm'n,* 17 Utah 2d 337, 339, 411 P.2d 831, 832 (1966); *see also Utah County v. Orem City,* 699 P.2d 707, 709 (Utah 1985); *Millett v. Clark Clinic Corp.,* 609 P.2d 934, 936 (Utah 1980).

■ We hold that the powers of UAMPS enumerated in section 11–13–5.5 are additional to the statutory powers of the individual members of UAMPS and that they can invest UAMPS with their power to buy and sell electric power so that it can conduct the operation of its members' joint or cooperative action.

Affirmed.

HALL, C.J., DURHAM and ZIMMERMAN, JJ., and DAVIDSON, Court of Appeals Judge, concur.

STEWART, J., does not participate herein; DAVIDSON, Court of Appeals Judge, sat.