**UTAH ASSOCIATED MUNICIPAL POWER SYSTEMS, Petitioner,**

v.

**PUBLIC SERVICE COMMISSION OF UTAH, Brian E. Stewart, Brent H. Cameron, and James M. Byrne, Commissioners of the Public Service Commission of Utah, Respondents.**

No. 870201.

Supreme Court of Utah.

March 20, 1990.

James A. Holtkamp and Kate Lahey, Salt Lake City, for petitioner.

David Stott and Laurie Noda, Salt Lake City, for Public Service Com'n.

Thomas W. Forsgren, Sidney G. Baucom, and Edward A. Hunter, Jr., Salt Lake City, for Utah Power & Light.

Michael Ginsberg, Salt Lake City, for Div. of Public Utilities.

Sandy Mooy, Salt Lake City, for Committee of Consumer Services.

David S. Christensen, Salt Lake City, for Utah Energy Office.

David L. Wilkinson, Stephen J. Sorenson, and Richard M. Hagstrom, Salt Lake City, for Utah Atty. Gen.

Lynn Mitton, Sandy, for Deseret Generation & Transmission Co-op.

Donald B. Holbrook, William B. Bohling, Elizabeth M. Haslam, and Sharon E. Sonnenreich, for Utility Shareholders of Utah.

ZIMMERMAN, Justice:

Utah Associated Municipal Power Systems ("UAMPS") seeks a writ of review of a Utah Public Service Commission ("PSC") order assuming jurisdiction over UAMPS and denying it a certificate of convenience and necessity that would allow it to construct a transmission line in southwestern Utah. UAMPS contends that section 11–13–27 of the Code, which requires that it obtain a certificate of convenience and necessity from the PSC before constructing the transmission line, violates article VI, section 28 of the Utah Constitution. *See* Utah Code Ann. § 11–13–27 (1986) (amended 1987); Utah Const. art. VI, § 28. We uphold the constitutionality of section 11–13–27 and affirm the order of the PSC.

UAMPS is a political subdivision of the state of Utah, organized under the Interlocal Co–Operation Act. Utah Code Ann. §§ 11–13–1 to –36 (1986 & Supp.1989). That Act was initially passed in 1965 and extensively amended in 1977. Its purpose was "to permit local governmental units to make the most efficient use of their powers by enabling them to co-operate with other localities on a basis of mutual advantage." Utah Code Ann. § 11–13–2 (1986). UAMPS is comprised of cities, towns, and local public agencies within Utah whose aim is to construct generating and transmission facilities for their mutual use. UAMPS has the same powers, privileges, and authority accorded its individual political subdivisions. Utah Code Ann. § 11–13–4 (1986); *see Utah Power & Light v. Utah Associated Mun. Power Sys.*, 784 P.2d 137, 137–38 (Utah 1989).

In 1985, UAMPS decided to build a 345 kv electric transmission line from the Intermountain Power Project plant in Lyndll, Utah, to St. George, Utah. The line was to serve the needs of UAMPS member cities in southern Utah. Under section 11–13–27 of the Code, a provision of the Interlocal Co–Operation Act, UAMPS was required to obtain a certificate of convenience and ne-

cessity from the PSC before it could construct the line. Utah Code Ann. § 11–13–27 (1986) (amended 1987). In August of 1985, it filed the necessary application. Utah Power & Light ("UP & L") also applied to the PSC for permission to construct a 345 kv electric transmission line over the same general geographic area. It claimed to need the additional capacity to serve its wholesale and retail customers. Both proposals were, at least in part, a response to the population growth, actual and projected, in southwestern Utah. The PSC consolidated its consideration of the two applications in response to expressions of concern by the Bureau of Land Management about the need for and the environmental impact of the proposed construction of two essentially parallel transmission lines between central and southwestern Utah. The matter came to the BLM's attention because both UP & L and UAMPS had sought rights-of-way over public lands. The PSC held over fifty hearings on the proposals from late 1985 to early 1987. Extensive evidence was presented concerning, inter alia, the need for the respective lines, their characteristics, the ability of the parties to finance, construct, and operate the lines, possible alternatives to the lines, and the effect of the projects on the overall public interest.

On March 3, 1987, the PSC issued a report and order that provided an interim solution for the short-term electrical transmission shortfall in southwestern Utah. This report and order denied the applications of both UAMPS and UP & L to build their proposed 345 kv lines. The PSC cited the high cost of the transmission lines and the many uncertainties about the need for the proposed transmission capacity in the near term. The PSC particularly noted that the UAMPS proposal was very expensive and seemed largely motivated by UAMPS' desire to have its own transmission facilities so that it would not have to use those of UP & L, rather than a search for the alternative least costly to its customers.

The PSC's interim order authorized construction by UP & L of a shorter, twenty-mile transmission line in southwestern

Utah from Newcastle to UP & L's central substation. This line would connect with an existing line and enable UP & L to provide the emergency transmission capacity needed to handle the short-term requirements for the area in question. The PSC's order also indicated that the PSC would begin studying UP & L's wheeling practices and that other issues would be subject to future consideration, including possible joint ownership of transmission facilities by UP & L and UAMPS and the future construction of UAMPS' requested transmission facilities, as demand warranted.

UAMPS requested a rehearing and a stay of the UP & L line construction authorization. *See* Utah Code Ann. § 54–7–15 (1986) (amended 1988). On May 21, 1987, the PSC denied UAMPS' application for rehearing and stay. UAMPS sought review by this Court, but did not ask us to stay construction during the review process. The line, therefore, has been completed and is providing service to southwestern Utah.

Before this Court, UAMPS does not challenge the specific order of the PSC granting UP & L a certificate for construction of the short line and denying UAMPS' request for a certificate. Rather, UAMPS mounts a frontal attack on the requirement in section 11–13–27 of the Code that UAMPS obtain a certificate of convenience and necessity from the PSC before building the proposed transmission line. UAMPS contends that section 11–13–27 is unconstitutional because it requires UAMPS, an entity composed of various local governments, to obtain a certificate from the PSC, contravening article VI, section 28 of the Utah Constitution, which prohibits the delegation of authority over "municipal functions" to a "special commission." Utah Const. art. VI, § 28.

We first consider UP & L's argument that under section 54–7–15 of the Code, an issue is not preserved for consideration on appeal unless it has been specifically raised in a petition for rehearing before the PSC. We agree with this contention. UP & L asserts that UAMPS' rehearing petition did not squarely raise the question of the constitutionality of PSC jurisdiction over the construction of a transmission line by UAMPS. We agree that UAMPS' petition for rehearing was not as focused as it could have been on this point; however, we deem the petition sufficient to give us jurisdiction over the question.[1]

We next consider the primary issue of this case—UAMPS' challenge to the requirement that it submit to the jurisdiction of the PSC under section 11–13–27. Section 11–13–27 provides in pertinent part:

> Any political subdivision organized pursuant to this act [Interlocal Co–Operation Act] before proceeding with the construction of any electrical generating plant or transmission line shall first obtain from the public service commission a certificate, after hearing, that public convenience and necessity requires such construction and in addition that such construction will in no way impair the public convenience and necessity of electrical consumers of the state of Utah at the present time or in the future.

Utah Code Ann. § 11–13–27 (1986) (amended 1987).

Article VI, section 28 of the Utah Constitution, which UAMPS contends conflicts with section 11–13–27, states, "The legislature shall not delegate to any special commission ... any power to make, supervise or interfere with any municipal improvement, money, property or effects ... or to perform any municipal functions." Utah Const. art. VI, § 28.

---

1. Both parties urge that even if UAMPS did not properly present the question in its petition for rehearing, we should proceed to consider it because it has been fully briefed. They both cite *Williams v. Public Service Commission*, 754 P.2d 41, 49 n. 9 (Utah 1988), in support of this suggestion. We reject this position. While on occasion we may indulge in dictum on issues not before the Court, often because the issues may arise on remand, *see* R. Utah S.Ct. 30(a), nothing in *Williams* supports the view that we will take the further step of assuming jurisdiction over an appeal grounded on an issue that has not been properly preserved for appeal under section 54–7–15.

UAMPS contends that the PSC is a "special commission" within the meaning of article VI, section 28, that UAMPS acts in the stead of the municipalities of which it is composed, and that the construction of the transmission line is a "municipal function"; therefore, it argues, the requirement that UAMPS obtain a certificate of convenience and necessity from the PSC before proceeding with construction runs afoul of article VI, section 28.[2] The PSC contends that UAMPS cannot bring itself within article VI, section 28, because it is not a municipality and is not performing a "municipal function."

■ We first note the presumption of validity accorded legislative enactments when attacked on constitutional grounds. The burden is on those who would have us strike down the statute. *E.g., City of West Jordan v. Utah State Retirement Bd.,* 767 P.2d 530, 532, 537 (Utah 1988); *Lehi City v. Meiling,* 87 Utah 237, 246–47, 48 P.2d 530, 535 (1935).

UAMPS bases its challenge to section 11–13–27 largely on the decisions in *Logan City v. Public Utilities Commission,* 72 Utah 536, 271 P. 961 (1928), and *Barnes v. Lehi City,* 74 Utah 321, 279 P. 878 (1929). In *Logan City,* the Public Utilities Commission ("PUC") had been given the power by the legislature to fix rates charged by utilities, including municipally owned utilities that served citizens of the municipality. The PUC attempted to exercise this power over Logan City's utility. We held that this offended article VI, section 28. Necessary to this holding was a determination that the PUC, predecessor to the PSC, was a "special commission" within the meaning of article VI, section 28 and that when the PUC attempted to regulate the rates charged by a municipally owned electric company to residents of the municipality, it was "perform[ing] a municipal function." *Logan City,* 72 Utah at 561, 271 P. at 970. The next year, we decided *Barnes v. Lehi City.* There, we followed *Logan City* and

held that article VI, section 28 was offended if the PUC was permitted to require a certificate for the construction of a municipally owned power plant outside the boundaries of a municipality when the electricity was to be sold to residents of the municipality. *Barnes,* 74 Utah at 336, 348–49, 279 P. at 883, 888.

UAMPS would read *Logan City* and *Barnes* to mean, in substance, that the PSC cannot require a municipality, or one exercising the powers of a municipality, to obtain a certificate of convenience and necessity before constructing a power plant or a transmission facility because these activities indirectly will affect the rates charged to customers and because, more generally, municipalities are constitutionally autonomous when acting to provide municipal utilities. The effect of UAMPS' petition would be to read article VI, section 28 and *Logan City* and *Barnes* as defining anything having to do with the operation of a municipal utility as a "municipal function," the performance of which is beyond the reach of state regulation. Neither the constitutional provision nor the holdings of *Logan City* and *Barnes* can properly be so read.

■ It is certainly true that *Logan City* and *Barnes* hold that the PUC, and therefore the PSC, is a "special commission." We see no reason to depart from that holding since it appears to be congruent with the purpose behind "ripper clauses," of which article VI, section 28 is an example. *See City of West Jordan,* 767 P.2d at 533–34. On the other hand, little guidance can be drawn from *Logan City* and *Barnes* as to what constitutes a "municipal function" under article VI, section 28. On that question, our point of departure must be our decision in *City of West Jordan v. Utah State Retirement Board,* handed down after the briefing and oral argument in this case.

In *City of West Jordan,* the City challenged statutes governing the state retire-

---

2. A premise of UAMPS' argument is that it is exercising the authority of its constituent municipalities when it undertakes to construct facilities. We have very recently indicated agree-

ment with this premise. *See Utah Power & Light Co. v. UAMPS,* 784 P.2d 137, 141 (Utah 1989).

ment system that required any political subdivision, such as West Jordan, providing retirement benefits to its employees to do so through the state retirement system. West Jordan contended that the State Retirement Board, which runs the system, was a "special commission" and that the provision of retirement benefits to municipal employees was a "municipal function."

This Court assumed, *arguendo*, that the Board was a "special commission"; it then identified the central question as "whether the Board is performing a 'municipal function' within the meaning of article VI, section 28." *City of West Jordan*, 767 P.2d at 533. We reviewed the background of article VI, section 28 and the cases construing the provision. In so doing, we noted the indeterminacy of the meaning of the term "municipal functions," as shown by our cases and the decisions of other courts interpreting similar phrases in other state constitutions. In Utah, the indeterminacy results largely from the failure of this Court to articulate and employ a consistent approach to the issue in the many article VI, section 28 cases we have decided over the years. *Id.* at 534. After surveying the area, we stated, "A review of our decisions provides relatively little by way of a consistent analytical framework for determining how to characterize a given area of activity." *Id.* at 534. We did note, however:

> [O]ur more recent cases, such as *Tribe [v. Salt Lake City Corp.*, 540 P.2d 499, 502–03 (Utah 1975)] and [*Salt Lake City v.] International Ass'n of Firefighters [Locals 1645, 593, 1654, and 2064*, 563 P.2d 786, 788–89 (Utah 1977)], reflect an increasing willingness to recognize that many functions traditionally performed by municipalities may be sufficiently infused with a state, as opposed to an exclusively local, interest to escape characterization as "municipal functions" for purposes of article VI, section 28.

*Id.* We then rejected pat characterizations of specific functions or categories of functions as being invariably "municipal" and set out to provide an analytical framework that would guide future applications of the

term "municipal functions" to new fact situations.

■ *City of West Jordan* settled on a balancing approach to decide whether any particular activity is a "municipal function." *Id.* We stated that factors pertinent to such a determination include, but are not limited to,

> the relative abilities of the state and municipal governments to perform the function, the degree to which the performance of the function affects the interests of those beyond the boundaries of the municipality, and the extent to which the legislation under attack will intrude upon the ability of the people within the municipality to control through their elected officials the substantive policies that affect them uniquely.

*Id.* We noted, "This sort of balancing approach is best suited to accomplishing the purposes of the ripper clause [article VI, section 28] without erecting mechanical conceptual categories that, without serving any substantial interest, may hobble the effective government the state constitution as a whole was designed to permit." *Id.*

■ Applying the teachings of *City of West Jordan* to the present case, it is clear that we must reject UAMPS' effort to categorically label any activity relating to a municipally-owned utility or affecting the rates charged by such a utility as a "municipal function." Instead, we must consider the activity in question in light of the purposes of article VI, section 28.

The "function" we are considering here is not the mere construction of a transmission line by a utility owned by a single municipality to serve its own municipal customers. It is the construction of a transmission line by a political subdivision of the state that combines more than twenty cities, towns, and local agencies throughout the state of Utah for the purpose of generating, buying, and selling electricity across the state. *See Utah Power & Light v. Utah Associated Mun. Power Sys.*, 784 P.2d 137, 137–38 (Utah 1989). And the line it proposes to build would parallel a line UP & L is asking the PSC for permission to build, with consequent aggravation of envi-

ronmental harm in areas outside the boundaries of any member of UAMPS. Moreover, UAMPS' proposed line is designed to open up new areas for the wholesaling of electricity to municipalities now served by UP & L, with possibly severe economic consequences for UP & L and its customers statewide. We have little difficulty finding that the construction of this line by UAMPS is "sufficiently infused with a state, as opposed to an exclusively local, interest to escape characterization as [a] 'municipal function[ ].' " *City of West Jordan,* 767 P.2d at 534. Therefore, we conclude that the Interlocal Co–Operation Act does not delegate to the PSC the performance of a "municipal function" when it requires that before UAMPS proceeds with construction of a transmission line on this scale, it "shall first obtain from the public service commission a certificate ... that public convenience and necessity requires such construction and in addition that such construction will in no way impair the public convenience and necessity of electrical consumers of the state of Utah at the present time or in the future." Utah Code Ann. § 11–13–27 (1986) (amended 1987).

Looking at some of the specific factors mentioned in *City of West Jordan* gives the basis for this conclusion in greater detail. One of the factors mentioned for determining whether a function is exclusively local and should be free of state control is the degree to which the function in question "affects the interests of those beyond the boundaries of the municipality." *City of West Jordan,* 767 P.2d at 534. As generally alluded to above, the construction of the proposed line by UAMPS has far-reaching impacts beyond the boundaries of UAMPS members. Among the impacts is that, according to the PSC, the proposed UAMPS line would subject the existing UP & L system to the risk of system instability *from potential power outages if not miti-gated by additional protective equipment.* The legislature apparently recognized that the activities of UAMPS and similar entities could have a great potential to affect those beyond their boundaries when it passed section 11–13–27 and required the PSC to assure that construction of a trans-mission line, inter alia, "will in no way impair the public convenience and necessity of electricity consumers ... at the present time or in the future." Utah Code Ann. § 11–13–27 (1986) (amended 1987).

Another factor mentioned by *City of West Jordan* is the "relative abilities of the state and municipal governments to perform the function." *City of West Jordan,* 767 P.2d at 534. Here, the very fact that the municipalities have given UAMPS control over construction goes a long way to demonstrate that the function is one beyond the ability of any local governmental entity to perform effectively. And the state, in the person of the PSC, has a better ability than any municipality to consider the interests of all those outside the boundaries of the UAMPS members who may be adversely affected by the project and to minimize those consequences. Indeed, that is precisely the charge given the PSC by section 11–13–27.

A third, and probably the most critical, factor mentioned in *City of West Jordan* is "the extent to which the legislation under attack will intrude upon the ability of the people within the municipality to control through their elected officials the substantive policies that affect them uniquely." *Id.* This factor is designed "to prevent [the] interference with local self-government" that is at the core of article VI, section 28. *Municipal Bldg. Auth. v. Lowder,* 711 P.2d 273, 281 (Utah 1985), *quoted in City of West Jordan,* 767 P.2d at 534.

There is no question that if UAMPS must abide by decisions of the PSC regarding whether and when it may construct facilities such as transmission lines, some municipalities may be less able to provide their residents with low cost municipal power, if only for economic reasons. There may also be other adverse consequences on member municipalities' ability to serve their customers. However, such PSC decisions do not amount to an intrusion in the day-to-day management by elected officials of any particular municipality's electric utility system. At most, the choices available to elected municipal officials may be narrowed or made more costly than would

otherwise be the case. This does not warrant our concluding that the legislation unduly restricts the ability of the citizens of such a municipality to govern themselves. The degree to which there may be a slight impingement on the alternatives available to local government is not, on balance, sufficient to warrant finding article VI, section 28 infringed, especially in light of the vast extra-territorial consequences of such a holding.

We conclude that UAMPS' construction of its electric transmission line to benefit its members is not a "municipal function" and, therefore, that section 11–13–27 is not unconstitutional. There is no need to reach the other issues raised by the parties. We affirm.

HALL, C.J., and HOWE, Associate C.J., and DURHAM, J., concur.

STEWART, J., concurs in the result.